UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MCKENZIE THOMPSON,<br><br>                                    Plaintiff,<br><br>v.<br><br>WALLACE COMMERCIAL LANDSCAPE; and DOES 1 through 25, inclusive,<br><br>                                    Defendant. | Case No.: 23-cv-01530-AJB-DDL<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; and**<br><br>**(2) DENYING DEFENDANT'S MOTION FOR SANCTIONS**<br><br>**(Doc. Nos. 14 & 15)** |

Before the Court is Defendant Wallace Commercial Landscape's motions for summary judgment, (Doc. No. 14), and Rule 11 sanctions, (Doc. No. 15). The motions have been fully briefed, (Doc. Nos. 19, 20, 22, 23), and the matter is suitable for determination on the papers and without oral argument, pursuant to Local Civil Rule 7.1.d.1. Accordingly, the Court hereby **VACATES** the hearing currently set for August 29, 2024, at 2:00 p.m. For the reasons stated herein, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Defendant's motion for Rule 11 sanctions.

///

///

1

## I.  BACKGROUND

Plaintiff began working for Wallace Commercial Landscape as a civilian groundskeeper on Camp Pendleton in December 2021. (Deposition of McKenzie Thompson ("Thompson Depo."), Doc. No. 19-1, at 7, 9.)[1] Defendant is a landscape contractor that was charged with servicing DeLuz Housing on Camp Pendleton's Military Base. (*Id.* at 8, 28–29.) Due to medical and personal issues, Plaintiff had a total of three different employment stints with Defendant, from December 2021 through late January 2022; May 2022 through September 2022; and late November 2022 through March 2023. (*Id.* at 11, 18–19.) Throughout her employment, Plaintiff was primarily supervised by Kristina Butcher. (*Id.* at 22.) When Butcher was absent, Plaintiff was supervised by Clarence Farnham. (*Id.* at 33–34.) Plaintiff's job duties generally did not require her to work off-base, and there were only four or five instances during Plaintiff's employment in which she left the base for a brief period of time. (Doc. No. 14-1 at 6; Thompson Depo. at 24–26.)

Beginning in January 2023, Farnham made inappropriate sexual-based comments and unwelcome advances toward Plaintiff. (Thompson Depo. at 30.) For example, Farnham frequently made inappropriate comments such as "women getting wet for him," "getting women off," and "women love vibrators." (*Id.* at 31–32, 34; Doc. No. 14-1 at 7.) These remarks were made in front of Butcher and other team members during lunch breaks or while commuting together. (Thompson Depo. at 35.)

On one occasion, while purchasing work supplies off-base at Lowe's Home Improvement with Farnham and Butcher, Farnham made inappropriate comments about Plaintiff's physical appearance, remarking that she has a "nice ass." (*Id.* at 32, 36.) Moreover, Farnham invited Plaintiff to his house on multiple occasions, always extending these invitations when they were alone together at work. (*Id.* at 31, 33–34.)

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

On February 10, 2023, Farnham, Butcher, and Plaintiff planned to surf together at Cardiff by the Sea in Encinitas after work. (*Id.* at 38–39.) Farnham offered to drive Plaintiff to save on gas. (*Id.* at 47–48.) Although Butcher had agreed to join them, she ultimately did not show up at the beach, leaving Plaintiff and Farnham alone. (*Id.* at 38–39.)

While in the car on the drive to the beach, Farnham made numerous inappropriate sexual remarks to Plaintiff and suggested that they change clothes together, and referred to his penis as "his Johnson." (*Id.* at 39.) Farnham continued to make inappropriate remarks throughout their time together. (*Id.*) Once back in the car after surfing, Farnham grabbed and squeezed Plaintiff's right breast and placed his hand on her inner thigh. (*Id.* at 40, 78–79.) Plaintiff firmly told Farnham "No," but despite the refusal, he persisted and confessed his attraction to her. (*Id.* at 40.)

During this car ride home from the beach, Plaintiff text messaged Butcher that Farnham had "made a move" on her and made her feel uncomfortable. (*Id.* at 59; Doc. No. 19-1 at 87.) The next morning, Plaintiff met with Butcher and reported Farnham's groping in detail. (Thompson Depo. at 60.) When asked if Plaintiff felt comfortable with the prospect of continuing to work with Farnham, Plaintiff responded "I honestly don't know." (*Id.*)

A couple of days later, on February 13, 2023, Plaintiff informed Butcher that she was still "struggling" with Farnham's groping, and that she "wasn't really too comfortable" working with him. (Doc. No. 19 at 11.) The same day, Plaintiff also told her boyfriend about the groping incident, who became upset and messaged Farnham's wife about Farnham's infidelity. (Thompson Depo. at 54–55.) Farnham's wife thereafter appeared at Defendant's worksite to confront her husband about the assault allegation. (*Id.* at 37–38.) Approximately one day later, Plaintiff overheard a conversation between Butcher and Farnham regarding the Encinitas incident, in which she heard Butcher say to Farnham, "it's not like you really did anything," or words to that effect. (Declaration of McKenzie Thompson ("Thompson Decl."), Doc. No. 19-2, ¶ 24.)

///

On or around February 22, 2023, Defendant's owner, Ms. Wallace, came to the Camp Pendleton worksite. Wallace pulled Plaintiff aside and notified her that Butcher had reported the Encinitas incident. (Thompson Depo. at 63.) When Wallace asked if Plaintiff was okay, she responded, "Not really," and when asked if she was okay working with Farnham, she responded, "I don't know." (*Id.* at 64.) Wallace then told Plaintiff that "some things were just meant to be a secret." (*Id.* at 63.) No investigation or corrective action took place.

On March 16, 2023, Butcher was absent from the worksite, and Farnham was left in charge of the team. (*Id.* at 51.) After a verbal altercation with Farnham, in which he stated Plaintiff "was basically begging for and asking for it," Plaintiff grew upset and text messaged Butcher that she was "heading to the sheriffs [sic] office to start a report and an investigation to press charges." (*Id.* at 71–72; Doc. No. 19-1 at 88.) Butcher responded, "Alright give my info for an additional witness." (Doc. No. 19-1 at 88.) Plaintiff immediately went to report Farnham's February 10th Encinitas sexual assault to the San Diego County Sheriff's Department North Coastal Station. (Doc. No. 19-1 at 90.)

Later that day, within a few hours of Plaintiff informing Butcher that she was filing a police report, Defendant terminated Plaintiff's employment by text message. (Doc. No. 19-1 at 88.) Indeed, Butcher text messaged Plaintiff, stating "We are going to go ahead and release you from your position. I will need your keys back so if you could bring them tomorrow morning. We will pay you until the end of next Friday." (*Id.*) Plaintiff responded by asking, "Why am I being released[?]" but Butcher merely responded, "I need you to return your keys please." (*Id.*)

Plaintiff filed the Complaint on July 6, 2023, in the Superior Court of California, County of San Diego, as Case No. 37-2023-00028451-CU-OE-CTL. (*See* Doc. No. 1-2.) On August 18, 2023, Defendant removed the case to this Court pursuant to 28 U.S.C. §§ 1331 and 1441(a). (*Id.*) Plaintiff voluntarily dismisses her second (gender discrimination), fourth (negligent supervision), sixth (wrongful termination), and seventh (intentional infliction of emotional distress) claims, but asserts the motion for summary

judgment should be denied as to her remaining claims. (Doc. No. 19 at 7.) Plaintiff's remaining claims are brought under California's Fair Employment and Housing Act ("FEHA"), California Government Code § 12940, *et seq.*, for (1) sexual harassment, (2) failure to prevent sexual harassment and/or discrimination, and (3) retaliation. (*Id.*)

## II. MOTION FOR SUMMARY JUDGMENT

### A. Request for Judicial Notice

Defendant requests judicial notice in support of its motion for summary judgment. The Court may take judicial notice of facts that are "not subject to reasonable dispute that is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

In support of its motion, Defendant asks the Court to take judicial notice of (1) California Legislature, Stats, 1939, ch. 710, § 1, ceding exclusive jurisdiction of the land which became Camp Pendleton; and (2) Letters of acceptance, dated January 12 and September 8, 1943, and February 18, 1944, from Acting Secretary of the Navy to the Governor of the State of California, in which the federal government accepted jurisdiction of the land which became Camp Pendleton. (Doc. No. 14-8 at 2.) Plaintiff does not oppose judicial notice of these documents. (*See generally* Doc. No. 19.) The Court finds these exhibits are matters of public record to which there are no reasonable disputes. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). As such, the Court **GRANTS** Defendant's request for judicial notice.

### B. Legal Standard

A court may grant summary judgment when it is demonstrated there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party seeking summary judgment bears the initial burden of informing a court of the basis for its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate an absence of a genuine dispute of material fact.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Where the nonmoving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the nonmoving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the nonmoving party's claim. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If a moving party fails to carry its burden of production, then "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party cannot "rest upon the mere allegations or denials of the adverse party's pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *See Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) (internal quotation marks, alterations, and citation omitted).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before a court must be drawn in favor of the opposing party. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003). However, "[b]ald assertions that genuine issues of material fact exist are insufficient." *See Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007); *see also Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1159 (C.D. Cal. 2013) ("Conclusory, speculative

testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."). Further, a motion for summary judgment may not be defeated by evidence that is "merely colorable, or is not significantly probative . . . ." *See Anderson*, 477 U.S. at 249–50 (citations omitted); *see also Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2006) (same). If the nonmoving party fails to produce evidence sufficient to create a genuine dispute of material fact, the moving party is entitled to summary judgment. *See Nissan Fire & Marine*, 210 F.3d at 1103.

### C. Discussion

Defendant moves for summary judgment on all of Plaintiff's claims, asserting each are barred under the federal enclave doctrine. (Doc. No. 14-1 at 5.)

#### 1. Federal Enclave Doctrine

Defendant first contends Camp Pendleton is a federal enclave which came into being in or around 1942, and that Plaintiff's claims are thus barred by the federal enclave doctrine. (Doc. No. 14-1 at 12.) Defendant further asserts Plaintiff's pertinent allegations are solely based on conduct occurring at the workplace, and thus took place on a federal enclave. (*Id.* at 13.) Defendant also argues that to the extent Plaintiff's allegations extend beyond the workplace, they are immaterial as Defendant has no liability for Plaintiff's interactions with Farnham away from the workplace outside of work hours. (*Id.*) Plaintiff concedes Camp Pendleton is a federal enclave and that she generally worked on a federal enclave, but asserts the pertinent allegations arise from sexual harassment of Plaintiff away from Camp Pendleton. (Doc. No. 19 at 15–16.)

Federal courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States, including claims pursuant to the federal enclave doctrine. 28 U.S.C. § 1331. The federal enclave doctrine draws its authority from Article I, section 8, Clause 17 of the U.S. Constitution:

> Congress shall have power * * * To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat

>    of Government of the United States, and to exercise like Authority over all
>    Places purchased by the Consent of the Legislature of the State in which the
>    Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards,
>    and other needful Buildings.

U.S. Const. art. I § 8, cl. 17. Unless repudiated by Congress, the laws applicable to a federal enclave include (i) federal law and (ii) state laws that were in effect at the time of cession and are not inconsistent with federal law. *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 610–11 (2019) (citing *James Stewart & Co. v. Sadrakul*, 309 U.S. 94, 100 (1940)); *see Chicago, R.I. & P. Ry. Co. v. McGlinn*, 114 U.S. 542, 547 (1885). Given the federal government's exclusive jurisdiction over federal enclaves, preexisting state law consistent with federal law continues in force as surrogate federal law, unless altered by Congress. *Korndobler v. DNC Parks & Resorts at Sequoia*, No. 1:15-cv-00459 LJO SKO, 2015 WL 3797625, at *3 (E.D. Cal. June 18, 2015).

Pursuant to the federal enclave doctrine, "the activities of federal installations are shielded by the Supremacy Clause from direct state regulation unless Congress provides 'clear and unambiguous' authorization for such regulation." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180, (1988). This shield extends to "a federally owned facility performing a federal function . . . even though the federal function is carried out by a private contractor, unless Congress clearly authorizes such regulation." *Id.* at 181.

Plaintiff's remaining first, third, and fifth claims, for sexual harassment, failure to prevent sexual harassment and/or discrimination, and retaliation, are based on the FEHA. (*See* Doc. No. 1-2.) "The predecessor statutes of FEHA were contained in the Fair Employment Practices Act, which was not enacted until 1959." *Taylor v. Lockheed Martin Corp.*, 78 Cal. App. 4th 472, 483 (2000) (citing former Cal. Labor Code, § 1410 et seq., added by Cal. Stats. 1959, ch. 121, § 1, pp. 1999–2005). Plaintiff does not argue that these claims come within a reservation of jurisdiction by California or that FEHA was adopted by Congress.

Defendant further asserts that other than the Encinitas incident, Plaintiff's allegations are solely based on conduct occurring at the workplace. (Doc. No. 14-1 at 13.)

Plaintiff asserts that Defendant's reaction when Plaintiff reported the Encinitas incident—first to Burnham, and then to police—occurred away from Camp Pendleton, and thus the federal enclave doctrine does not apply. (Doc. No. 19 at 16.)

### a. Sexual Harassment

Plaintiff's first claim alleges sexual harassment under the FEHA. FEHA prohibits sexual harassment in the workplace. *See* Cal. Gov't Code § 12940(j)(1). "[U]nder the FEHA, an employer is strictly liable for *all* acts of sexual harassment by a supervisor." *State Dept. of Health Servs. v. Superior Ct.*, 31 Cal. 4th 1026, 1042 (2003). "A workplace may give rise to liability [under FEHA] when it is permeated with discriminatory sex-based intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Alexander v. Cmty. Hosp. of Long Beach*, 46 Cal. App. 5th 238, 262 (2020) (quoting *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 278–79 (2006)) (cleaned up).

As to the Encinitas beach incident, Defendant asserts it has no liability for Plaintiff and Farnham's interactions away from the workplace outside of work hours. (Doc. No. 14-1 at 13.) The Court agrees. *See State Dept. of Health Servs. v. Superior Ct.*, 31 Cal. 4th 1026, 1041 n.3 (2003) ("The employer is not strictly liable for a supervisor's acts of harassment resulting from a completely private relationship unconnected with the employment and not occurring at the workplace or during normal working hours."); *Atalla v. Rite Aid Corp.* 89 Cal. App. 5th 294, 309, 311 (2023) ("The underlying goal of FEHA in this context is to provide effective measures to prevent *workplace* harassment.").

Defendant next argues the federal enclave doctrine applies here because a claim of sexual harassment under the FEHA is inextricably tied to the workplace. (Doc. No. 22 at 6.) Defendant additionally argues that where the majority of pertinent claims forming a cause of action take place on a federal enclave, the federal enclave doctrine applies. (*Id.* (citing *Jimenez v. Haxton Masonry, Inc.*, No. 18-cv-07109-SVK, 2020 WL 3035795, at *5–6 (N.D. Cal. June 5, 2020), and *Jamil v. Workforce Res., LLC*, No.: 18-CV-27-JLS (NLS), 2018 WL 2298119, at *4 (S.D. Cal. May 21, 2018)).) In *Jimenez*, the court found

the plaintiff's claims stemmed from work conducted on various federal enclaves. The plaintiff argued that the hours spent traveling to and from federal enclave job sites precluded the application of the federal enclave doctrine, but the court found this unpersuasive. 2020 WL 3035795, at *5.

Similarly, in *Jamil*, the plaintiffs sought recovery for travel time to and from the military base and other off-the-clock work. 2018 WL 2298119, at *1. The defendants removed the case to federal court on the basis of the federal enclave doctrine, and the plaintiffs filed a motion to remand arguing that the entirety of the wage and hour violations happened outside of the federal enclaves. *Id.* at *1, *3–4. The court held that "[a]lthough some events took place on Camp Pendleton and others took place at Defendants' office, it is clear that the majority of the pertinent events took place on a federal enclave. The allegations stem from Plaintiffs' employment and work performed at Camp Pendleton. This is sufficient for federal jurisdiction." *Id.* at *4.

The Court also finds *Albers v. Yarbrough World Solutions*, No. 5:19-cv-05896-EJD, 2020 WL 2218964 (N.D. Cal. May 7, 2020), instructive. In *Albers*, the plaintiff filed suit against his employer for violations of the Racketeer Influenced and Corrupt Organizations Act and California wage and hour laws. *Albers*, 2020 WL 2218964, at *1. Plaintiff alleged the federal enclave doctrine was irrelevant to his complaint because many of the alleged tortious acts occurred outside of federal enclaves. *Id.* at *7. The court initially found that "any claims stemming from projects on federal lands are barred." *Id.* The court further held, however, that his remaining claims were unrelated to Plaintiff's services at the federal enclave. *Id.* at *8. The court stated, "Plaintiff had to enter this [illegal] agreement [in violation of the California Business and Professions Code] regardless of where he performed construction services—the agreement applied to *all* contracted services (private, state, *or* federal). Plaintiff has pled sufficient facts to show that the agreement applied equally to his non-federal projects."

The Court finds the majority of the claims forming Plaintiff's sexual harassment claim take place on a federal enclave, and thus this claim is barred by the federal enclave

doctrine. Plaintiff concedes that "Farnham's sexual harassment could be initially traced to sexually harassing comments Farnham made on Base, and on work-related trips . . . ." (Doc. No. 19 at 20.) Indeed, Plaintiff states Farnham began making inappropriate comments to her in January 2023, and that "most of these comments were made on Base[.]" (*Id.* at 19.) Plaintiff further asserts that Farnham's off-site, after hours sexual harassment affected her *at work*. (*Id.*) Moreover, Plaintiff only alleges one work-related trip to purchase work supplies off-base at Lowe's Home Improvement, during which Farnham made inappropriate comments about Plaintiff's physical appearance. (*Id.* at 9–10.) Plaintiff's single alleged work-related trip was related to her employment at Camp Pendleton and, as such, the Court finds "the majority of the pertinent events took place on a federal enclave."

Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's sexual harassment claim.

### b. Retaliation and Failure to Prevent Harassment/Discrimination

Plaintiff asserts her claim for failure to prevent harassment overlaps with her harassment claim, which she asserts is not barred by the federal enclave doctrine because the Encinitas incident did not occur on a federal enclave. (Doc. No. 19 at 17.) In reply, Defendant asserts this cause of action is concerned with preventing *workplace* discrimination and harassment, and because the majority of pertinent events took place on a federal enclave, the federal enclave doctrine applies. (Doc. No. 22 at 8.)

Plaintiff similarly asserts that because she was terminated for events arising from locations away from Camp Pendleton (the February 2023 Encinitas incident and the March 2023 police station report), the federal enclave doctrine does not bar her fifth claim for FEHA retaliation. (Doc. No. 19 at 22.) Plaintiff specifically asserts she "predominantly *worked on* a federal enclave (Camp Pendleton), but her *FEHA retaliation claim* arises from *sexual harassment* that occurred *off* a federal enclave, and her resulting police report also occurred *off* a federal enclave." (*Id.*) Defendant replies that Plaintiff's retaliation claim

arises out of her work on Camp Pendleton, and thus is barred by the federal enclave doctrine. (Doc. No. 22 at 5.)

In determining whether a particular tort claim "arose on" a federal enclave, courts consider whether the "tort claims arose from actions and injuries that occurred on federal enclaves." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 750 (9th Cir. 2022), *cert. denied sub nom. Chevron Corp. v. San Mateo Cnty., Cal.*, 143 S. Ct. 1797 (2023). If the claim is "too attenuated and remote" from the federal enclave, then the federal enclave does not bar state law claims. *Id.* at 750–51.

The Court finds that because Plaintiff was employed exclusively at Camp Pendleton, her employment claims arose within a federal enclave, regardless of where the actions underlying the decisions concerning her employment or termination occurred. *See Haining v. Boeing Co.*, No. 2:12–cv–10704–ODW (MRWx), 2013 WL 4874975, at *2–3 (C.D. Cal. Sept. 11, 2013) (finding federal enclave doctrine barred state-law employment claims despite the plaintiff's assertion that certain employment decisions and communications occurred outside the enclave). Plaintiff fails to cite any case, and the Court finds none, for the proposition that a plaintiff's employment claims arise where the underlying events affecting the employment decision takes place. While not directly on point, several cases have emphasized that a court looks to "the plaintiff's place of employment as the significant factor in determining where the plaintiff's employment claims arose under the federal enclave doctrine." *Lockhart v. MVM, Inc.*, 175 Cal. App. 4th 1452, 1459–60 (2009).

In *Haining*, the plaintiff argued his state law employment claims arose from Boeing employees' conduct and actions occurring outside the federal enclave, asserting:

> (a) his complaints were communicated to Boeing Human Resources and Equal Employment Opportunity representatives located outside the enclave; (b) these Boeing representatives confirmed Haining's complaints and conducted their investigation outside the enclave; (c) Boeing's representatives also confirmed Haining's requests for accommodations for Parkinson's disease while outside the enclave; and (d) Boeing's representatives denied Haining's requested accommodations based on decisions made outside the enclave.

*Haining*, at *2. The court found this argument unavailing, noting that "[t]he enclave's law governs the employment claims of an employee of a federal contractor operating on a federal enclave." *Id.* at *3 (citing *Taylor v. Lockheed Martin Corp.*, 78 Cal. App. 4th 472, 481 (2000) ("As the employee of a contractor operating on the enclave, Taylor's claims are governed by the enclave's law.")).

Similarly, in *Lockhart*, the court upheld the dismissal of the plaintiff's claims under the federal enclave doctrine despite the plaintiff's argument that (1) the termination was decided and implemented at MVM's headquarters in Virgina, which was not on a federal enclave, and (2) she was informed of her termination at home, also not on a federal enclave. *Lockhart*, 175 Cal. App. 4th at 1458–59. The court found that despite this evidence, "appellant was the employee of a federal contractor operating on a federal enclave. Thus, her employment claims are governed by the enclave's law." *Id.* at 1459; *see Abikar v. Bristol Bay Native Corp.*, 300 F. Supp. 3d 1092, 1102 (S.D. Cal. 2018) (finding the plaintiff's argument that the federal enclave doctrine did not apply because the defendant made their decisions regarding the plaintiffs' employment from outside the federal enclave "plainly meritless").

Thus, the Court finds Plaintiff's retaliation and failure to prevent harassment claims are barred by the federal enclave doctrine, and **GRANTS** Defendant's motion for summary judgment as to these claims.

### III. MOTION FOR SANCTIONS

Next, Defendant seeks sanctions against Plaintiff and her counsel under Federal Rule of Civil Procedure 11 "due to the significant amount of time Plaintiff has been on both actual and constructive notice that her claims have no legal basis." (Doc. No. 15-1 at 9.) Defendant argues Plaintiff knew at the onset of filing her Complaint that all material allegations occurred on a federal enclave, and that Defendant attempted to meet and confer on this issue, but Plaintiff did not meaningfully engage in the process nor agreed to dismiss her claims. (*Id.* at 10.) Defendant requests the Court to enter an order (1) granting Defendant's motion for sanctions pursuant to Rule 11 in its entirety; (2) awarding monetary

sanctions against Plaintiff and her counsel, Gruenberg Law, in the amount of $44,784.40, and (3) dismissing all of Plaintiff's causes of action with prejudice, and dismissing this action. (*Id.* at 3.)

### A. Legal Standard

Federal Rule of Civil Procedure 11 provides in pertinent part, that when a party presents a signed paper to a court, that party is certifying that to the best of their "knowledge, information and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).  Sanctions under Rule 11(c) are warranted only when there has been a violation of Rule 11(b), *i.e.*, when a party files a lawsuit or motion that is frivolous, legally unreasonable, without factual foundation, or is otherwise brought for an improper purpose. *Warren v. Guelker*, 29 F.3d 1386, 1388 (9th Cir. 1994) (citing *Conn v. Borjorquez*, 967 F.2d 1418, 1420 (9th Cir. 1992); *Operating Engrs. Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988)). A filing is "frivolous" when it is "both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). A filing is made for an improper purpose if it was intended "to harass, cause unnecessary delay, or needlessly increase the cost of litigation[.]" Fed. R. Civ. P. 11(b)(1).  Either improper purpose or frivolousness is sufficient to sustain an award of sanctions under Rule 11(c). *Townsend*, 929 F.2d at 1362.

A finding of subjective bad faith is not required under Rule 11. *See Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994) ("Counsel can no longer avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head."). If the court determines a Rule 11 violation occurred, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

///

### B.  Safe Harbor Notice

Where such sanctions are sought by motion, Rule 11 contains a "safe harbor" provision stating that a motion for sanctions may not be filed until 21 days after it is served. *See* Fed. R. Civ. Pro. 11(c)(1)(A). This "safe harbor" gives the party subject to the Rule 11 motion 21 days to withdraw the offending pleading and thereby escape sanctions. *See Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998). The 21-day "safe harbor" period is an absolute prerequisite (unless some other period is established by a court) to a motion for sanctions brought by any party. This provision does not apply to bar court-initiated sanction proceedings; however, the court must issue an order to show cause and there are restrictions on the court's sua sponte sanctions authority. *See id.*

Here, Defense counsel formally served its Rule 11 "safe harbor" notice on February 8, 2024. (Doc. No. 15-3 at 2–3.) After the required 21 days, on March 5, 2024, Defendant filed this Motion with the Court. (Doc. No. 15) Accordingly, Defense counsel has met the procedural requirement for Rule 11 sanctions.

### C.  Sanctions against Plaintiff and Her Counsel

The Court declines to find that Plaintiff's case is frivolous or objectively unreasonable. "A claim is not objectively baseless as long as there is '*some* plausible basis' for the argument, even if that basis is 'quite a weak one.'" *Simpson v. Cal. Pizza Kitchen, Inc.*, No. 13-cv-164-JLS (JMA), 2013 WL 12114487, at *3 (S.D. Cal. Oct. 23, 2013) (citing *United Nat. Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1117 (9th Cir. 2001)). The Court exercises its discretion in light of the totality of the circumstances and finds that this case is not exceptional warranting sanctions. Plaintiff provided evidence of incidents occurring away from the federal enclave, and though ultimately unsuccessful, Plaintiff presented reasonable theories of liability, all supported by facts and evidence. That the Court ultimately found the federal enclave doctrine applied, thus barring Plaintiff's claims, does not render Plaintiff's claims frivolous.

The Court therefore **DENIES** Defendant's motion for sanctions.

///

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's motion for summary judgment, (Doc. No. 14), and **DENIES** Defendant's motion for Rule 11 sanctions, (Doc. No. 15). The Clerk of Court is directed to enter judgment on behalf of defendant's and against the plaintiff on all remaining claims and close the case.

**IT IS SO ORDERED.**

Dated: August 15, 2024

Hon. Anthony J. Battaglia
United States District Judge